

# NUMBER 13-10-00164-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**REX A. JOHNSON,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the County Court at Law No. 2
of Jefferson County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Chief Justice Valdez**

Appellant, Rex A. Johnson, was charged by information with assault, a class A misdemeanor. *See* TEX. PENAL CODE ANN. § 22.01(a)-(b) (West Supp. 2010). A jury convicted appellant of the charged offense and sentenced him to thirty days'

confinement, which was probated for one year, with a $250 fine. By five issues, which we reclassify as two, appellant argues that: (1) the evidence is legally and factually insufficient to support his conviction; and (2) the trial court committed reversible error by failing to properly charge the jury on self-defense, defense of property, and defense of third-person property. We affirm.

## I.     BACKGROUND[1]

### A. The State's Evidence

The State called two witnesses in its case-in-chief—John Louis Stockwell II, the complainant, and Melanie Dawn Epperly, a police officer with the Beaumont Police Department. Stockwell testified that he works for Safety Adjustors, a repossession agent for several credit unions and "major finance companies." On April 8, 2008, Stockwell was instructed to repossess a 2003 Chevrolet Impala from Rex Johnson Jr. because Rex Jr. had filed for bankruptcy and the automatic stay apparently had been lifted. Rex Jr. lived in a property next door to appellant, a property also owned by appellant. Stockwell pulled into the driveway of appellant's property and saw the Chevrolet Impala parked in appellant's backyard. Stockwell testified that he exited the tow truck he was driving and proceeded toward the vehicle.

Shortly after arriving at the property, Stockwell encountered Jason Johnson, appellant's brother, who was building a storage shed in appellant's backyard. Jason did not know anything about the vehicle and went inside the house to get appellant. Stockwell recalled that appellant came outside "and immediately [appellant] starts hollering and screaming and cursing and telling me to get off his property." Stockwell

[1] This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

did not believe that he was going to be successful in repossessing the vehicle at this time, so he turned around and began walking back to his tow truck.

As he was walking toward his tow truck, Stockwell received a call on his cell phone. Stockwell answered the call, but before he could say anything, appellant allegedly hit Stockwell in the back of his head, which caused Stockwell to drop his cell phone. Stockwell testified that he was also hit in the face, which caused his nose to bleed. Stockwell recounted that Jason was also participating in the fight at this time. Stockwell admitted to fighting back to defend himself, but he denied being the initial aggressor. Eventually, Stockwell was able to make it back to his tow truck. As he tried to get into the truck, either appellant or Jason grabbed Stockwell's arm and tried to pull him out of the truck.[2] Stockwell located a bottle of pepper spray in a storage compartment in the door of the tow truck and sprayed both appellant and Jason. After spraying the two, Stockwell got into the tow truck and left the scene.

Because his cell phone was "somewhere in [appellant's] yard," Stockwell went back to his employer's office to call the police. Later, Stockwell provided police with statements about the incident at the police station. Police took pictures of Stockwell and his clothing for documentation purposes. These pictures were admitted into evidence and showed the clothing that Stockwell was wearing on the day of the incident. His shirt was torn and had blood on it, and his shorts also had blood on them.

---

[2] In response to questioning by the State about whether he ever hit appellant with the door of his tow truck, Stockwell stated: "Not to my knowledge. I was trying to get in my truck. If I did, it was not on purpose; but I don't think it ever happened that way. He was holding on to my arm the whole time."

3

Police also photographed Stockwell's face to document injuries Stockwell sustained to his forehead and nose.[3]

Later, Stockwell returned to appellant's property with the police to retrieve Stockwell's cell phone. When they arrived, appellant started "hollering and screaming" profanities at Stockwell, so Stockwell stayed in the street while the police officer spoke to appellant about the cell phone. Stockwell's cell phone was never recovered. Ultimately, Stockwell decided to press charges against appellant for the alleged assault.

Officer Epperly testified that she and another police officer responded to a call regarding an alleged assault at appellant's property. Police took statements from both Stockwell and appellant but made no arrests at that time. Officer Epperly noted that when appellant was questioned about Stockwell's allegations, appellant stated that he had been assaulted. Officer Epperly recalled seeing injuries on Stockwell. In particular, she saw "a pretty good size[d] lump on his [Stockwell's] forehead, some injuries on his face, some minor scratches." Officer Epperly testified that appellant told her that he had been sprayed and that appellant complained about neck and back pain. However, "[appellant] refused EMS on the scene" and stated that he would seek medical treatment at a later date. On cross-examination, Officer Epperly admitted that no arrests were made because there were no witnesses to the incident and that no one corroborated Stockwell's allegations.

## B. Appellant's Evidence

After the State rested but before he presented his case-in-chief, appellant moved for a directed verdict, which was denied. Appellant and Jason then testified on

---

[3] The pictures taken by police did not depict any blood on Stockwell's face. However, Stockwell acknowledged that he had taken a shower before he went to the police station to give his statements about the incident.

appellant's behalf.  Appellant denied ever striking Stockwell and, instead, asserted that Stockwell had assaulted him.  Appellant recalled that Stockwell trespassed on his property and that he told Stockwell, in a civil manner, to leave.  Appellant alleged that he repeatedly asked Stockwell for "court papers" as proof that the vehicle was subject to repossession, yet Stockwell never showed any documentation to appellant.  Appellant then testified that the incident did not get heated until Stockwell hit appellant by opening the door to the tow truck.  Appellant remembered Stockwell spraying pepper spray in his eyes.  Appellant continued to fight, though he could not open his eyes.  Appellant noted that Stockwell was on top of him when Jason entered into the fray.  Jason stated that Stockwell's shirt was torn when he tried to pull Stockwell off of appellant.[4]  After Jason allegedly separated Stockwell and appellant, Stockwell got into the tow truck and left.  Appellant stated that he received several bruises as a result of the fight and admitted that he had gotten his "butt kicked."  Appellant then tried to file charges against Stockwell.  However, after reviewing the evidence, the Beaumont Police Department did not elect to press charges against Stockwell, an event that appellant described as unjust.

The jury subsequently convicted appellant of class A misdemeanor assault.  *See id.*  Appellant was sentenced to thirty days' confinement in a Jefferson County jail with a $250.00 fine.  The trial court probated appellant's incarceration for a period of one year.

---

[4] Jason described his involvement in the fight as follows:

> At the truck.  When [Stockwell] slammed the truck door in Rex[']s knees, I'm still up on the house.  They—he's yelling at Rex.  Rex asking [sic] him to leave.  He slammed his truck door in [sic] into Rex; and all I—I'm up there; and I look and I see Rex falling.  Then I see the pepper spray being sprayed.  I'm up on the roof.  I come down the ladder.  He's on top of Rex.  I pulled him off of Rex.  He jumped in the truck, and he left.  That's how his shirt got torn.

Appellant later filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 21.8(c). This appeal followed.

## I.     EVIDENTIARY SUFFICIENCY

By his first issue, Johnson contends that the evidence supporting his conviction is legally and factually insufficient. Specifically, Johnson argues that the evidence established that he acted in self-defense. We disagree.

### A. Standard of Review

The Texas Court of Criminal Appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902-03, 912 (Tex. Crim. App. 2010) (plurality op.). Accordingly, we review claims of evidentiary sufficiency under "a rigorous and proper application of the *Jackson* standard of review." *Id.* at 906-07, 912.

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 898-99 (characterizing the Jackson standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt."). Under the *Jackson* standard, the reviewing court gives full deference to the jury's responsibility "'to fairly resolve conflicts in the testimony, to weigh the evidence, and to

6

draw reasonable inference from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318-19).

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik*, 953 S.W.2d at 240). In order to prove that appellant committed the offense of assault under section 22.01 of the penal code, the State was required to prove that (1) appellant intentionally, knowingly, or recklessly (2) caused bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1).

## B. Discussion

At the outset of our analysis of this issue, we note that the *Brooks* court held that the legal sufficiency and factual sufficiency standards of review are "indistinguishable"; thus, we need not conduct a separate factual sufficiency analysis of the evidence supporting appellant's conviction. *See* 323 S.W.3d at 902. In rigorously applying the *Jackson* standard of review to this case, we look at all of the evidence in the record in the light most favorable to the prosecution. *See* 443 U.S. at 319; *see also Brooks*, 323 S.W.3d at 898-99. Here, the facts pertaining to the incident were hotly contested. Stockwell testified that he pulled into appellant's driveway to repossess a 2003 Chevrolet Impala. According to Stockwell, appellant exited his home shortly after Stockwell arrived and began yelling, screaming, and cursing at him. Stockwell noted

7

that because of appellant's belligerence, he decided to not repossess the vehicle at that time and turned back to his tow truck to leave the property. While he was walking back to his tow truck, Stockwell's cell phone rang, and as he picked it up, Stockwell recalled being punched by appellant. Stockwell and appellant then began to tussle, and as a result of the fight, Stockwell suffered injuries to his forehead and his nose. In addition, his clothing was ripped and was bloodied from the fight. Stockwell ended the fight by spraying appellant with pepper spray. Stockwell left the premises shortly thereafter.

On the other hand, appellant testified that Stockwell trespassed on his property and that he spoke with Stockwell in a civil manner. Appellant stated that he requested that Stockwell produce "court papers" to prove that the repossession was valid, but Stockwell allegedly refused to comply. Appellant noted that he followed Stockwell back to his tow truck but that appellant was acting calmly. According to appellant and Jason, once appellant and Stockwell approached the tow truck, Stockwell slammed the tow truck door into appellant. Then, Stockwell sprayed appellant in the eyes with pepper spray. Appellant testified that he defended himself but that he could not see everything that was going on because of the pepper spray in his eyes. Appellant admitted that he had gotten his "butt kicked" and that he had suffered bruising as a result of the fight. Appellant told Officer Epperly that Stockwell had assaulted him, and appellant attempted to press charges against Stockwell when he learned that he was being investigated for assaulting Stockwell. No charges were filed against Stockwell.

Obviously, the jury was faced with conflicting testimony about what occurred during the altercation. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) (stating that the jury is the exclusive judge of the facts proved and of the weight given to the

8

testimony); *see also Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (noting that "[t]he jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record" and that the jury may choose to believe or disbelieve all or any part of a witness's testimony). Essentially, the jury was charged with determining whether Stockwell or appellant was the initial aggressor in this case. The charge included language on the law of self-defense, and the jury was instructed to acquit appellant if they believed from the evidence adduced during trial showed that Stockwell was the initial aggressor and that appellant was justified in using reasonable force. On appeal, appellant contends that the evidence proves that Stockwell was the initial aggressor, and thus, the jury should have acquitted appellant based upon the law of self-defense.

"[A] person is justified in using force against another when and to the degree [he] reasonably believes the force is immediately necessary to protect [himself] against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a) (West Supp. 2010). Section 9.31(a)(1)(A) provides that:

> The actor's belief that the force was immediately necessary . . . is presumed to be reasonable if the actor:
>
> > (1) knew or has reason to believe that the person against whom the force was used:
> >
> > > (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment . . . .

*Id.* § 9.31(a)(1)(A). However, section 9.31 states that the use of force against another is unjustified if, among other things, "the actor abandons the encounter, or clearly

9

communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter . . . ." *Id.* § 9.31(b)(4)(A).

The issue of self-defense is an issue of fact to be determined by the jury. *See Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991). Moreover, the State has the burden of persuasion in disproving the evidence of self-defense, rather than the burden of production, which requires that the State affirmatively produce evidence refuting the self-defense claim. *See id.* at 913. In other words, the State, in this case, was merely required to prove its case for assault beyond a reasonable doubt. *See id.*

In convicting appellant of assault, the jury clearly believed Stockwell's testimony that appellant was the initial aggressor. Because the jury's verdict was premised on the resolution of conflicting testimony, we must defer to its conclusion. *See Jackson*, 443 U.S. at 326; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the fact[-]finder resolved the conflicts in favor of the prosecution and therefore defer to that determination."). Viewing the evidence in the light most favorable to the prosecution, we conclude that the jury was rational in rejecting appellant's self-defense contention and convicting him for the assault of Stockwell. *See* TEX. PENAL CODE ANN. §§ 9.31, 22.01; *see also Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 898-99. As such, we find that the evidence is sufficient to sustain appellant's conviction. *See* TEX. PENAL CODE ANN. § 22.01; *see also Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 898-99. Accordingly, we overrule appellant's first issue.

## II.    THE JURY CHARGE

10

By his second issue, appellant asserts that the trial court committed reversible error by failing to charge the jury on defense of property, defense of third-person property, and the applicable presumptions of self-defense. The State counters by arguing that the jury was properly instructed on self-defense and any error associated with the instruction was not preserved for appeal. The State further contends that appellant's arguments pertaining to defense of property and defense of third-person property must fail because no evidence was adduced at trial to support the inclusion of jury instruction on those matters.

## A. Applicable Law

A charge on a defensive issue is required if the defendant presents affirmative evidence that would constitute a defense to the crime charged and the defendant properly requests a jury charge. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) (providing that a defendant must distinctly specify each ground of objection to the charge); *Chapman v. State*, 921 S.W.2d 694, 695 (Tex. Crim. App. 1996) (holding that a defendant preserves error if a request is specific enough to put the trial court on notice of an omission or error in the charge; the requested charge need not be "in perfect form," but only sufficient enough to call error to the trial court's attention); *Brazelton v. State*, 947 S.W.2d 644, 646 (Tex. App.–Fort Worth 1997, no pet.); *see also Lowe v. State*, No. 09-07-548-CR, 2008 Tex. App. LEXIS 3666, at *2 (Tex. App.–Beaumont May 21, 2008, pet. ref'd) (mem. op., not designated for publication). A defendant who produces evidence raising each element of a requested defensive instruction is entitled to the instruction regardless of the source and the strength of evidence. *See Brazelton*, 947 S.W.2d at 646; *see also Lowe*, 2008 Tex. App. LEXIS 3666, at *2. In determining

11

whether evidence raises a defense, the credibility of the evidence is not at issue. *Brazelton*, 947 S.W.2d at 646 (citing *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993); *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991); *Warren v. State*, 565 S.W.2d 931, 933-34 (Tex. Crim. App. 1978); *Shafer v. State*, 919 S.W.2d 885, 887 n.1 (Tex. App.–Fort Worth 1996, pet. ref'd)). Unlike legal challenges to the sufficiency of the evidence, we review the evidence offered in support of a defensive issue in the light most favorable to the defense. *Id.* (citing *Shafer*, 919 S.W.2d at 887 n.1).

## B. Discussion

Here, the jury received an instruction regarding self-defense in the charge. Specifically, the trial court noted:

> Upon the law of self-defense, you are instructed that a person is justifiable [sic] in using force against another when and to the degree they reasonably believe the force is immediately necessary to protect themselves against the other person's use or attempted use of unlawful force. A person is under no obligation to retreat to avoid the necessity of repelling or defending against attack or threatened attack.
>
> When a person is attacked with unlawful force, or they reasonably believe they are under attack with unlawful force, and there is created in the mind of such person a reasonable expectation or fear of some bodily injury, then the law excuses or justifies such person in resorting to force by any means at their command to the degree that they reasonably believe such force is immediately necessary, viewed from their standpoint at the time, to protect themselves from such attack or attempted attack.
>
> It is not necessary that there be an actual attack or attempted attack, as a person has a right to defend their person from apparent danger as fully and to the same extent as they would had the danger been real, provided that they acted upon a reasonable apprehension of danger, as it appeared to them from their standpoint at the time, and that they reasonably believed such force was immediately necessary to protect themselves against the other person's use or attempted use of unlawful force.

12

In the application paragraph of the charge, the jury was instructed as follows:

> Now, if you find and believe from the evidence beyond a reasonable doubt that on the occasion in question the Defendant REX A. JOHNSON, did then and there unlawfully intentionally, knowingly, and recklessly cause bodily injury to JOHN STOCKWELL, II, hereafter styled the Complainant, by striking the Complainant with his hand, but you further find from the evidence, or you have a reasonable doubt thereof, that viewed from the standpoint of the Defendant at the time, from the words or conduct, or both, of JOHN STOCKWELL, II, it reasonably appeared to the Defendant that his person was in danger of bodily injury and there was created in his mind a reasonable expectation or fear of bodily injury from the use of unlawful force at the hands of JOHN STOCKWELL, II, and that acting under such apprehension and reasonably believing that the use of force on his part was immediately necessary to protect himself against JOHN STOCKWELL, II use or attempted use of unlawful force, the Defendant did cause bodily injury to JOHN STOCKWELL, II by striking Complainant with his hand, then you should acquit the Defendant, or if you have a reasonable doubt as to whether or not the Defendant was acting in self-defense on said occasion and under the circumstances, then you should give the Defendant the benefit of that doubt and say by your verdict "not guilty."

The charge does not include any instructions as to defense of property or third-person defense of property. And appellant admits that his trial counsel did not object to the charge as it was submitted and that his trial counsel did not request that the charge include instructions on defense of property or third-person defense of property. Nevertheless, appellant argues that we should apply the egregious harm analysis articulated in *Almanza v. State* to this matter. *See* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

However, the court of criminal appeals has held that a "defensive issue" is not "applicable to the case" unless the defendant "timely requests the issue or objects to the omission of the issue in the jury charge." *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998). Because appellant did not request that the charge include instructions on defense of property and third-person defense of property and because he did not object

13

to the omission of these issues in the charge, we conclude that the trial court had no duty to sua sponte instruct the jury on these issues and that a jury instruction on these issues was not applicable to the case absent a request by the defense for their inclusion in the charge. *See Tolbert v. State*, 306 S.W.3d 776, 781-82 (Tex. Crim. App. 2010); *Posey*, 966 S.W.2d at 62; *Brazelton*, 947 S.W.2d at 646; *see also Vasquez v. State*, 919 S.W.2d 433, 434 (Tex. Crim. App. 1996) (holding that "[i]n order to preserve error relating to the jury charge[,] there must be an objection or a requested charge") (citing *Boles v. State*, 598 S.W.2d 274, 278 (Tex. Crim. App. 1980)). Because there was no jury-charge "error" with respect to the absence of these instructions in the charge, we conclude that *Almanza*'s egregious harm analysis does not apply. *See Tolbert*, 306 S.W.3d at 782; *Posey*, 966 S.W.2d at 61 (stating that *Almanza* does not apply unless the appellate court first finds error in the jury charge); *see also Almanza*, 686 S.W.2d at 171.

With regard to the self-defense instruction included in the charge, appellant argues that the instruction was incomplete because it failed to "instruct the jury that Defendant had a 'reasonable belief' that the use of force was immediately necessary to protect himself." We find this argument to be meritless for several reasons.

First, as discussed above, appellant's trial counsel did not object to the charge as it was submitted. Second, we do not believe appellant was harmed because the charge specifically noted the following with regard to the applicable presumption for self-defense: "Upon the law of self-defense, you are instructed that a person is justifiable [sic] in using force against another when and to the degree they *reasonably believe* the force is immediately necessary to protect themselves against the other person's use or

14

attempted use of unlawful force." (Emphasis added.) *See* TEX. PENAL CODE ANN. § 9.31. Because the charge properly instructed the jury as to the "reasonable belief" presumption for self-defense as outlined in section 9.31 of the penal code, we reject this contention. *See Casey v. State*, 215 S.W.3d 870, 886-87 (Tex. Crim. App. 2007) (noting that the trial court did not err by including the word "victim" in the jury charge because the charge "set forth the law applicable to the case by tracking the language of the statute"); *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) (holding that an instruction that tracks statutory language "as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge"); *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994) ("A jury charge which tracks the language of a particular statute is a proper charge on the statutory issue."). Accordingly, we overrule appellant's second issue.

## III. CONCLUSION

Having overruled all of appellant's issues, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
26th day of May, 2011.

15