02-11-024-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00024-CR

 

 


 
 
 Joe Douglas Mercer
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 89th
District Court OF Wichita COUNTY

----------

MEMORANDUM
OPINION[1]

----------

A
jury convicted Appellant Joe Douglas Mercer of felony driving while intoxicated
(DWI) upon his plea of not guilty and his stipulation to two prior DWI
convictions.  The trial court sentenced him to seven years’ confinement. 
Appellant brings three issues on appeal, arguing that (1) there is a fatal
variance between the allegation in the indictment and proof offered at trial
because the Montague County conviction alleged for enhancement purposes does
not exist; (2) the trial court committed reversible error by admitting evidence
of a nonexistent DWI conviction in Montague County for enhancement purposes
and, therefore, the evidence is insufficient to support the conviction; and (3)
the trial court committed reversible error because it failed to submit to the
jury a requested instruction regarding the defense of necessity.  Because we
hold that the trial court reversibly erred by refusing to submit a necessity
instruction to the jury, we reverse the trial court’s judgment and remand this
case to the trial court for new trial.

I.  Enhancement
Allegation

The
State alleged by indictment that Appellant had previously been convicted of DWI
in cause number 4080047CCR in the 97th Judicial District Court of Montague
County, Texas.  Appellant argues in his first two issues that he was convicted
in Clay County, not Montague County, and in support has attached two exhibits
to his brief.  The State argues, and the record reflects, that the two exhibits
were not before the trial court.  Because the exhibits are not part of the
record, we cannot consider them.[2]

Additionally,
Appellant stipulated to the conviction in cause number 4080047CCR.  As the
State points out, a criminal defendant may stipulate to any fact or to any
element of an offense.  When he does so, the stipulation is a “kind of judicial
admission,” which may not be challenged on appeal.[3]  Because the trial court did
not err by admitting evidence of the prior conviction in cause number
4080047CCR or by charging the jury regarding that conviction, we overrule Appellant’s
first two issues.

II. 
Necessity Instruction

In
his third issue, Appellant argues that the trial court committed reversible
error because it failed to submit to the jury a requested instruction regarding
the defense of necessity.  Section 9.22 of the Texas Penal Code provides,

Conduct is justified
if:

(1) the actor
reasonably believes the conduct is immediately necessary to avoid imminent
harm;

(2) the desirability
and urgency of avoiding harm clearly outweigh, according to ordinary standards
of reasonableness, the harm sought to be prevented by the law proscribing the
conduct; and

(3) a legislative
purpose to exclude the justification claimed for the conduct does not otherwise
plainly appear.[4]

This
court has held that “[a] charge on a defensive issue is required if the accused
presents affirmative evidence that would constitute a defense to the crime
charged and a jury charge is properly requested.”[5]  If a defendant produces
evidence raising each element of a requested defensive instruction, he is
entitled to the instruction regardless of the source and strength of the
evidence.[6]

At
trial, Appellant testified that he had been at his office working on storage
space for his computer business.  In the evening, he bought a six-pack of beer
and returned to his work constructing shelving.  He drank the beer as he worked
on the shelving late into the night and into the early morning.  As Appellant
was working on the shelves, they fell over, hitting him in the head and
knocking him to the floor.  Appellant felt blood running down his face from a
cut on his temple near his left eye.  He tried to stop the bleeding by applying
pressure to the wound with a rag.  The blood continued to flow, and Appellant
became worried and decided to call for help.  Because the shelves knocked the
telephone from its normal position when they fell, Appellant was unable to find
the telephone.  Concerned because he was unable to stop the bleeding, Appellant
decided to drive himself to the hospital, reasoning that there was probably
very little traffic because of the late hour.

Appellant
was unfamiliar with the area in which the hospital was located and ended up in
downtown Wichita Falls.  Wichita Falls City Police Officer Jonathan Anderson stopped
Appellant for erratic driving.  Officer Anderson testified that he saw blood
running down Appellant’s face and a blood-soaked rag or shirt that Appellant
was holding against the side of his head.  Officer Anderson did not recall
seeing any other vehicles on the road.

Officer
Anderson arrested Appellant for DWI and transported him to the county jail.  The
jail staff refused to admit Appellant until he went to the hospital to have his
head wound evaluated.  Officer Anderson drove Appellant to the hospital, where
he was treated and released back into police custody.

At
the close of evidence, Appellant requested a jury instruction on necessity.  The
trial court denied the requested instruction.

It
is well-established law that an accused has the right to an instruction on any
defensive issue raised by the evidence, whether that evidence is weak or
strong, unimpeached or contradicted, and regardless of what the trial court may
or may not think about the credibility of the defense.[7]
 Appellant clearly raised the issue of necessity and clearly requested the
instruction.  The State argues that Appellant was not entitled to the necessity
instruction because instead of making a split-second decision, Appellant made a
considered decision to drive.  The State takes its argument from language found
in two opinions authored by this court.[8]
 The language to which the State refers is language that describes the meaning
of “imminent” and comes from an opinion from our sister court, the Fourteenth
Court of Appeals in Houston:

“Imminent” means
something that is impending, not pending; something that is on the point of
happening, not about to happen.  An “imminent harm” occurs when there is an
emergency situation, and it is “immediately necessary” to avoid that harm when
a split-second decision is required without time to consider the law.  In this
case, appellant had plenty of time to consider his options and the penalties he
would receive if he decided to violate the court’s order.  The children were in
his possession for almost 24 hours before they left Houston Intercontinental
Airport.  Furthermore, appellant concealed the location of his children for
over seven years.  We cannot hold that it was immediately necessary for
him to keep them out of the United States for that long, regardless of what
danger they were in before they left.  Finally, evidence was introduced at
trial as to the several lawful alternatives available to appellant.  For
example, appellant could have complained to Child Protective Services or filed
for an Ex Parte Prohibitive Order.  Additionally, he could have filed a
Petition for Home Studies or for an Ex Parte Temporary Order.  Instead of
choosing a lawful means to protect his children, appellant made the
contemplated decision to violate the court order.

At
oral argument, appellant asserted that his actions were reasonable because,
although the trial court recognized Carolyn’s drug problem, it still granted
her temporary custody.  In addition, after the second hearing was reset, he had
no faith in the judicial system and in the meantime, felt that his children
were being neglected or possibly abused by Carolyn.  Lack of faith in the legal
system cannot justify violating a court order.[9]

To
illustrate the difference between that case and the one before us, consider the
following hypothetical:  suppose that one of the children in that case was
sixteen years old and was kept drugged, but he nevertheless planned an escape
during hours or days of captivity and managed to secure a vehicle to aid in the
escape of himself and his siblings.  Suppose that he was arrested for driving
under the influence.  No appellate court would hold that he should be denied
the defense of necessity because he did not make a split-second decision to
escape, to steal the vehicle, or to drive while drugged.  To be entitled to a
charge on necessity, it is the harm that the defendant seeks to avoid that must
be imminent and not speculative or distant, not the decision to try to prevent
the harm.[10]

The
record shows that Appellant was bleeding and suggests that he was bleeding
profusely.  Appellant testified that he could not get his wound to stop
bleeding.  When asked what he thought was going to happen if he could not stop
the bleeding, Appellant responded, “Well, I—I sure didn’t want to lay there and
bleed to death.”  Appellant’s concern was apparently shared by jail personnel
because they insisted that he go to the hospital before they would accept him
in the jail.

Because
Appellant raised evidence of necessity and properly requested the instruction,
the trial court erred by denying his requested necessity instruction.  Error in
the charge, if timely objected to in the trial court, requires reversal if the
error was “calculated to injure the rights of [the] defendant,” which means no
more than that there must be some harm to the accused from the error.[11]  In other words,
a properly preserved error will require reversal as long as the error is not
harmless.[12] 
In making this determination, “the actual degree of harm must be assayed in
light of the entire jury charge, the state of the evidence, including the
contested issues and weight of probative evidence, the argument of counsel and
any other relevant information revealed by the record of the trial as a whole.”[13]

Because
necessity is a justification, a jury who believed his necessity defense would
be obligated to acquit Appellant of the offense of DWI.  Appellant, therefore,
suffered harm as a result of the trial court’s erroneous denial of his
requested necessity instruction.  We, therefore, sustain Appellant’s third
issue.

III. 
Conclusion

Having
overruled Appellant’s issues regarding the offense-enhancing conviction but
having sustained his jury charge issue, we reverse the trial court’s judgment
and remand this cause to the trial court for a new trial.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT,
GARDNER, and WALKER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 2, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. R. App. P.
34.1; Garrett v. State, 566 S.W.2d 605,
609 (Tex. Crim. App. 1978).





[3]Bryant v. State,
187 S.W.3d 397, 400 (Tex. Crim. App. 2005).





[4]Tex. Penal Code Ann. §
9.22 (West 2011).





[5]Brazelton v. State,
947 S.W.2d 644, 646 (Tex. App.—Fort Worth 1997, no
pet.) (citing Miller v. State, 815 S.W.2d 582, 585 (Tex. Crim.
App. 1991)).





[6]Id. (citing Hamel
v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996) (stating that accused
has right to defensive instruction on any defensive issue raised by
evidence whether evidence is strong or weak, contradicted or unimpeached, and
regardless of what trial court thinks about credibility of defense)).





[7]Granger v. State, 3
S.W.3d 36, 38 (Tex. Crim. App. 1999).





[8]Pennington v.
State, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth
2001, pet. ref’d); Jackson v. State, 50 S.W.3d 579, 594–95 (Tex.
App.—Fort Worth 2001, pets. ref’d).





[9]Smith v. State, 874
S.W.2d 269, 272–73 (Tex. App.—Houston [14th Dist.] 1994, pet. ref’d).





[10]See Vasquez v. State,
830 S.W.2d 948, 950 (Tex. Crim. App. 1992) (holding the defense of necessity
was raised by evidence that (1) while a prisoner, Vasquez had performed some
functions that a prison guard would normally perform and was therefore disliked
by many prisoners; (2) Vasquez was admitted to a hospital for injuries sustained
from having been kicked in the back by a released prison gang member; (3)
Vasquez claimed that ex-members of a prison gang kidnapped him from the
hospital and held him captive; (4) Vasquez stated that he escaped from his
kidnappers when he grabbed a gun from his distracted guard and fled; and (5)
Vasquez was walking through a convenience store parking lot after escaping when
he was arrested for possession of a firearm by a felon); see also Roquemore
v. State, 60 S.W.3d 862, 872 (Tex. Crim. App. 2001) (Womack, J. concurring)
(“Necessity justifies conduct that otherwise would be criminal, if the
desirability and urgency of avoiding imminent harm clearly outweigh the harm
sought to be prevented by the criminal law.”).





[11]Tex. Code Crim. Proc.
Ann. art. 36.19 (West 2006); Abdnor v. State, 871 S.W.2d 726, 731–32
(Tex. Crim. App. 1994); Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1985) (op. on reh=g);
see also Barrios v. State, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (AA claim of jury-charge
error is reviewed using the procedure set out in Almanza.@).





[12]Almanza, 686
S.W.2d at 171.





[13]Id.; see also
Ovalle v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).